# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CHARALENE CALE,

      Plaintiff,

v.

KILOLO KIJAKAZI,

      Defendant.

Case No. 2:21-cv-00683-NJK

**ORDER**

[Docket Nos. 17, 18]

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently before the Court is Plaintiff's Motion for Reversal and/or Remand. Docket No. 17. The Commissioner filed a response in opposition and a cross-motion to affirm. Docket Nos. 18, 19. Plaintiff filed a reply. Docket No. 20.

The parties consented to resolution of this matter by the undersigned magistrate judge. *See* Docket No. 3.

## I.    BACKGROUND

### A.    PROCEDURAL HISTORY

On March 13, 2017, Plaintiff filed an application for disability insurance benefits with an onset date of September 1, 2015. *See, e.g.,* Administrative Record ("A.R.") 211-15. On September 25, 2017, Plaintiff's claims were initially denied. A.R. 75-88. On January 29, 2018, Plaintiff's claims were denied on reconsideration. A.R. 89-105. On February 9, 2018, Plaintiff filed a request for a hearing before an administrative law judge. A.R. 124-25. On March 18, 2020, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ MaryAnn Lunderman. *See* A.R. 49-68. On May 11, 2020, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision. A.R. 19-34. On

1

February 23, 2021, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  A.R. 1-6.

On April 25, 2021, Plaintiff commenced this action for judicial review.  Docket No. 1.

B.    THE DECISION BELOW

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920 A.R. 19-34.  At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2019, and has not engaged in substantial gainful activity since the alleged onset date.  A.R. 22.  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, joint dysfunction, and varicose veins of the lower extremities.  A.R. 22-24.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  A.R. 25.  The ALJ found that Plaintiff has the residual functional capacity to

> perform a range of light work as defined in 20 CFR 404.1567(b), subject to certain additional limitations.  Specifically, postural activities must have been limited to occasionally and balancing and kneeling must have been limited to frequently.  In addition, within the assigned work area there must be less than occasional (seldom or rare) exposure to fumes, odors, dusts, gases, and poor ventilation.

A.R. 25.  *See also* A.R. 25-33.  At step four, the ALJ found Plaintiff is able to perform past relevant work as a radiology technician.  A.R. 33-34.  Based on all of these findings, the ALJ found Plaintiff not disabled through the date of the decision.  A.R. 34.

## II.    MERITS ARGUMENTS

This case involves three overarching issues: (1) whether remand is required in light of constitutional concerns regarding the tenure of former Commissioner Andrew Saul, (2) whether the ALJ erred in her evaluation of the medical opinion evidence, and (3) whether the ALJ erred by not accounting for all of the limitations she found in the residual functioning capacity.  The Court will address the latter merits contentions first.  *Cf. United States v. Raines*, 362 U.S. 17, 22 (1960) (addressing preference against "unnecessary pronouncements on constitutional issues").

. . . .

A.      DISABILITY DETERMINATION STANDARD

The standard for determining disability is whether a social security claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A). The disability determination is made by following a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). The first step addresses whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). When an individual is pursuing a claim under Title II, the claimant must also meet insurance requirements. 20 C.F.R. § 404.130. The second step addresses whether the claimant has a medically determinable impairment that is severe or a combination of impairments that significantly limits basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The third step addresses whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. There is then a determination of the claimant's residual functional capacity, which assesses the claimant's ability to do physical and mental work-related activities. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step addresses whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth step addresses whether the claimant is able to do other work considering the residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

After exhausting the administrative process, a claimant may seek judicial review of a decision denying social security benefits. 42 U.S.C. § 405(g). The Court must uphold a decision denying benefits if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___

1  U.S. ____, 139 S.Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not
2  high."  *Id.*

3        B.    MENTAL LIMITATIONS

4        Plaintiff submits that the ALJ erred in this matter by failing to consider her mild limitation
5  in concentrating, persisting, or maintaining pace in formulating the residual functional capacity.
6  Docket No. 17 at 11-15.  Plaintiff submits that, although the ALJ made a finding as to this mild
7  limitation at Step 2 of the analysis, the ALJ did not explicitly include this limitation in her residual
8  functional capacity.  *Id.*  The Commissioner submits that the ALJ properly crafted the residual
9  functional capacity, as only one mild limitation was found at Step 2 and the ALJ considered all of
10 Plaintiff's impairments in her discussion.  Docket No. 18 at 11-16.

11       The residual functional capacity is what an individual can do despite her "physical, mental,
12 nonexertional, or other limitations."  *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989)
13 (citing 20 C.F.R. § 404.1545).  In making this determination, the ALJ considers all relevant
14 evidence, including residual functional capacity determinations made by consultative examiners,
15 agency experts, and other doctors.  *See* 20 C.F.R. §§ 404.1513(c), 404.1545(a)(3), 416.913(c),
16 416.945(a)(3).  The residual functional capacity determination does not need to copy the exact
17 opinion of any particular doctor, but "the ALJ is responsible for translating and incorporating
18 clinical findings into a succinct" residual functional capacity.  *Rounds v. Commissioner*, 795 F.3d
19 1177, 1185-86 (9th Cir. 2015), *as amended* 807 F.3d 996, 1006 (9th Cir. 2015).

20       ALJs are required to consider all medically determinable impairments, including those
21 which are not "severe," in assessing the residual functional capacity.  20 C.F.R. § 404.1545(a)(2);
22 see *also Hutton v. Astrue*, 491 Fed.App'x. 850, 850 (9th Cir. 2012).  "Mild mental impairments
23 are by definition those that have no more than a minimal limitation on the ability to work and,
24 therefore, translate in most cases into no functional limitations."  *Vandiver v. Colvin*, 2016 U.S.
25 Dist. LEXIS 186060, at *14 (D. Nev. June 27, 2016) (internal citations omitted).  The fact that an
26 ALJ fails to explicitly address a mild limitation in the section of her order formulating a residual
27 functional capacity does not run afoul of the requirements of 20 C.F.R. § 404.1545(a)(2), so long
28 as the ALJ incorporates the findings by reference in assessing the residual functional capacity.

*Webb v. Colvin*, 2013 U.S. Dist. LEXIS 158387, at *31-35 (D. Nev. Aug. 14, 2013), report and recommendation adopted by *Webb v. Colvin*, 2013 U.S. Dist. LEXIS 158385 (D. Nev. Nov. 5, 2013).

In this case, the ALJ discussed the record that existed with respect to any difficulties Plaintiff had in social functioning in conducting the Step 2 analysis. A.R. 23-24. The ALJ considered the four broad functional areas of mental functioning set out in the regulations in 20 C.F.R., Part 404, Subpart P, Appendix I. *See id.* The ALJ determined that Plaintiff had a mild limitation in concentrating, persisting, or maintaining pace but no limitations in the three other areas of mental functioning. *Id.* The ALJ noted that the available medical records indicate that medical doctors had attributed this limitation to Plaintiff's physical condition and that no other difficulties or symptoms of depression were documented or reported by Plaintiff. *Id.* In reaching her finding that this mild limitation did not need to be translated into a functional limitation, the ALJ noted that medical records consistently documented "no significant mental status findings or cognitive defects." A.R. 24. The ALJ further relied on specific documentation in Plaintiff's treatment notes that documented "no mood swings, no anxiety, appropriate behavior, sufficient fund of knowledge, no tearfulness, no forgetfulness or memory loss, a normal attention span, normal concentration, and normal insight and judgment." *Id.* As such, the ALJ found that "[t]he lack of significant or consistent mental status abnormalities supports the conclusion the claimant experienced no more than mild impairment," and that "the evidence does not otherwise indicate there is more than a minimal limitation in the claimant's residual functional mental ability to do basic work activities." *Id.*

The ALJ incorporated this discussion into her residual functional capacity assessment discussion. *See* A.R. 33 ("As discussed in Finding Number 3 above, the claimant did not have any significant or consistent mental health treatment, she made minimal complaints in the record, and mental status examinations were consistently normal"). Given the ALJ's thorough consideration of Plaintiff's mild limitation in the Step 2 analysis and her incorporation of that analysis into the residual functional capacity assessment, the undersigned is unpersuaded by Plaintiff's argument

that the ALJ erred by failing to consider this mild limitation in assessing the residual functional capacity.  *See, e.g., Webb*, 2013 U.S. Dist. LEXIS 158387, at \*31-35.

The Court further finds that the ALJ's determination that this limitation was mild and did not affect Plaintiff's ability to work is supported by substantial evidence.  The record shows that only one doctor indicated that Plaintiff was suffering from depression and this report was contradicted by the doctor's own treatment notes.  A.R. 1705-06, 1708.  Further, Plaintiff's extensive medical treatment records consistently show no signs of depression, anxiety, or other indicia of an affected mental state.  *See, e.g.,* A.R. 1746, 1775-76, 1925, 1940, 1956, 2001, 2032, 2041, 2057, 2065, 2218, 2220, 2755, 2811, 2814, 2866, 2869, 2947, 3105, 3109, 3112-13, 3236-37, 3472, 3541, 3528, 3536, 3539, 3552, 3557, 3567, 3585, 3626-37, 3657, 3702, 3718, 3751, 3755, 3781, 3827, 3886-87, 4041, 4102, 4120, 4202, 4256.   This includes assessments that Plaintiff herself submitted.  *See, e.g.,* A.R. 1807.  Plaintiff points to no evidence to contradict the weight of the evidence in the record supporting the ALJ's determination.   Accordingly, her argument for remand on this basis fails.

C.    EVALUATION OF MEDICAL EVIDENCE

Plaintiff further submits that the ALJ committed legal error while assessing Plaintiff's residual functional capacity because she gave more weight to the state agency physicians' opinions than to medical opinions from three treating physicians, Dr. Coy, Dr. Kostic, and Dr. Grover.  Docket No. 17 at 5-10.   Plaintiff argues that the ALJ should have further developed the administrative records given that she discredited these treating physician opinions and gave more weight to agency physicians who made their determinations earlier in time.  *Id.* at 10.   The Commissioner submits that the ALJ did not commit legal error, as she properly weighed the opinions before her and her decision to ascribe little weight to the treating physician opinions was supported by clear and convincing reasons, as well as substantial evidence.  Docket No. 18 at 5-11.  The Commissioner further responds that the record was developed fully when the ALJ made her decision about the medical opinion evidence and that she acknowledged other evidence to support her discrediting of the opinion evidence for the time after the agency physicians evaluated Plaintiff's conditions and limitations.  *Id.* at 6-8.

A treating physician's medical opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with other substantial evidence in the record.[1]  *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).  Even when not controlling, such opinions are entitled to deference and must be weighed properly pursuant to applicable regulations.  *See, e.g., id.*  Nonetheless, the opinion of a treating physician is not necessarily conclusive as to the existence of an impairment or the ultimate issue of a claimant's disability.  *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  If a treating doctor's opinion is not contradicted by another doctor, the ALJ may only reject the treating doctor's opinion for "clear and convincing" reasons supported by substantial evidence in the record.  *See, e.g., Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Moreover, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Thomas*, 278 F.3d at 957.

The ALJ must give sufficient weight to "subjective aspects of a doctor's opinion." *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) and *Valencia v. Heckler*, 751 F.2d 1082, 1085 (9th Cir. 1985)).  A doctor's ultimate conclusion on limitations can be disregarded if the ALJ sets forth specific and legitimate reasons for doing so, supported by substantial evidence."  *See Revels v. Berryhill*, 874 F.3d 648, 654-55 (9th Cir. 2017) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  If a physician's opinion is "premised to a large extent upon the claimant's own account of [her] symptoms and limitations," it may be disregarded where those complaints have been "properly discounted." *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (citing *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433-34 (9th Cir. 1988)).  The ALJ only has a duty to develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

[1] The Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017, eliminating the hierarchy among treating, examining, and non-examining sources previously found in the regulations.  *See* 20 C.F.R. § 404.1520c(a).  This claim was filed before March 27, 2017; therefore, the new regulations are not applicable.  The old regulations continue to govern Plaintiff's case.  *See* 20 C.F.R. § 404.1527.

7

Plaintiff fails to demonstrate that she is entitled to remand based on the failure of the ALJ to properly consider and weigh the medical evidence and opinions in the record. The ALJ extensively discussed the treatment Plaintiff received from Dr. Coy, Dr. Kostic, and Dr. Grover as well as their findings and opinions in the context of the medical record before her. A.R. 28-33. The ALJ also considered and gave weight to the opinions of two state agency physicians, Dr. Jurani and Dr. Amon. A.R. 31. In assessing the weight of the opinions of Dr. Coy, Dr. Kostic, and Dr. Grover, the ALJ specifically found that each of their opinions proffering severe limitations was contradicted by their own treatment notes and other medical evidence in the record. A.R. 32. The ALJ noted that all three doctors "offered similar opinions that the claimant was unable to perform even sedentary work on a full-time basis, and that she experienced significant mental limitations." *Id.*

The Court finds that substantial evidence supports the ALJ's finding that Plaintiff did not require any mental limitations in her residual functional capacity determination, given the overwhelming documentation in the record that she experienced no cognitive defects and no indicia that mental status symptoms affected her ability to work or function. *See supra* at B. The Court now turns to whether the ALJ's determinations as to the opinions regarding Plaintiff's physical limitations were supported by substantial evidence.

The extent of the limitations set forth in Dr. Kostic's medical opinion are significantly more restrictive than her own treatment notes indicate. *See* A.R. 1705-08, 1743-47, 1754-60. The treatment notes from Dr. Kostic's sole mobility and pain evaluation indicate a moderately reduced range of motion, mild osteoarthritis in both of Plaintiff's hands, posterior tenderness, normal balance, normal gait, normal fine motor skills, and normal mental status. A.R. 1705-08, 1743-47. Despite these mild and moderate limitations, Dr. Kostic opined that Plaintiff would need significant manipulative limitations. A.R. 1754-56. The ALJ listed clear and convincing reasons for proscribing Dr. Kostic little weight. A.R. 31-32, *see Thomas*, 278 F.3d at 956-57. The Court therefore finds that the ALJ's findings regarding Dr. Kostic's opinion and the weight accorded to it are supported by substantial evidence.

Further, the ALJ discounted Dr. Coy's opinions on Plaintiff's manipulative limitations given that his own treatment notes indicate that the actual impact of Plaintiff's osteoarthritis was mild and not severe. A.R. 32. Apart from indicating in one visit in 2017 that medication that Plaintiff had been prescribed for her back was helping with tenderness in her finger, A.R. 4415, Dr. Coy's treatment notes rarely mention concerns about manipulative limitations of any kind. *See* A.R. 1795-1818, 4368-4468. The records also indicate that Plaintiff stopped taking her medication completely in March 2018. *See, e.g.,* A.R. 4379. Plaintiff also underwent surgery for her back and neck conditions and her post-operative records show progress and treatment of those conditions. *See, e.g.,* A.R. 1940, 2261, 2691, 2706, 2781, 3409, 4287. The Court therefore finds that the ALJ listed clear and convincing reasons for not giving Dr. Coy's opinion controlling weight, which are supported by substantial evidence.

Finally, the ALJ discounted Dr. Grover's opinion because the severity of the limitations he included in his opinion were contrary to his own treatment notes. A.R. 32. Specifically, the ALJ noted that Dr. Grover had seen Plaintiff frequently over a period of years, and progress notes indicated that her limitations and symptoms were less severe than those articulated in his opinion. *Id.* Dr. Grover's treatment notes and the surgical interventions show improvement in her physical limitations over time, particularly following surgeries that he prescribed and/or performed. *See* A.R. 2123, 2191, 2261, 2263, 2310, 2357, 2368, 2384, 2781, 3089, 3409, 3411, 3483, 4287, 4343, 4364. Physical therapy notes from before and after Plaintiff's surgeries also support improvement in her functioning and limitations after surgeries. *See* A.R. 2078-2092, 2196-2212, 2225-2242, 2269-2279, 2693-2689, 2932-2936, 3382-3403. The Court therefore finds that the ALJ listed clear and convincing reasons, supported by substantial evidence in the record, for giving little weight to the opinion set forth by Dr. Grover.

The Court also finds that the ALJ was not required to develop the record. The record in this case consists of thousands of pages of medical records. *See* A.R. These medical records include extensive treatment documentation from Dr. Coy, Dr. Kostic, and Dr. Grover, covering the entire period each doctor treated Plaintiff and the time periods preceding and following her treatment. The records are clear as to Plaintiff's changing medical conditions throughout her

insured status period.  The ALJ considered the totality of this evidence, including all the opinions provided to her, in her determination.  *See* A.R. 25-33.  Given that the Court finds that the record was not ambiguous or inadequate, the Court finds that the ALJ did not err in not further developing the record.

Accordingly, Plaintiff is not entitled to remand based on her merits-based arguments.

## III.    CONSTITUTIONAL ARGUMENT

Having determined that remand is not warranted based on the merits-based arguments presented, the Court turns to Plaintiff's constitutional challenge.[2]  Plaintiff argues that she is entitled to relief on appeal because the tenure of the Commissioner of Social Security heading the agency at the time of her denial of benefits was unconstitutional in that he could not be removed by the President without cause.  Docket No. 17 at 15-18.[3]  The Commissioner counters that, regardless of whether the tenure of the previous Commissioner was unconstitutional, Plaintiff has not established a sufficient nexus between the constitutional infirmity and her denial of benefits to warrant relief.  Docket No. 18 at 16-27.  The Court agrees with the Commissioner.

. . . .

. . . .

---

[2] The Court notes at the outset a procedural defect in that Plaintiff did not plead a constitutional violation in her complaint.  *See* Docket No. 1-1.  Pursuant to the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Montoya v. Colvin*, No. 2:16-cv-00454-RFB-NJK, 2016 WL 890922, at *1-3 (D. Nev. Mar. 8, 2016) (applying Rule 8 in the Social Security context).  Moreover, that an unpled claim is later presented through argument in substantive briefing is insufficient to preserve the claim.  *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008).  Hence, it appears Plaintiff waived her constitutional argument by not pleading it.  *See, e.g.*, *John R. v. Comm'r of Soc. Sec.*, No. C20-6176-MLP, 2021 WL 5356719, at *5 (W.D. Wash. Nov. 16, 2021).  As the Commissioner did not raise this waiver issue, however, the Court will address the constitutional argument on its merits.

[3] This is one of several constitutional issues that has been percolating within the administrative law realm in recent years, adding importance to being clear as to what Plaintiff is *not* arguing.  Most significantly, Plaintiff is not arguing that the ALJ was improperly appointed by then-Acting Commissioner Berryhill.  *See* Docket No. 17 at 15-18.  As such, this case does not involve an appointments challenge like those raised in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), or *Carr v. Saul*, 141 S.Ct. 1352 (2021).  This distinction is of particular importance because an appointment violation is remedied with a new hearing before a properly appointed official. *Lucia*, 138 S.Ct. at 2055.  For the reasons discussed below, relief is not provided as a matter of course with respect to the "tenure" issue that Plaintiff is relying upon in this case.  *See Collins v. Yellen*, ___ U.S. ____, 141 S.Ct. 1761, 1788 (2021) (distinguishing *Lucia*).

A.    CONSTITUTIONAL VIOLATION

The Social Security Independence and Program Improvements Act of 1994 provides that the Social Security Administration is a component within the United States Department of Health and Human Services that will act as an "independent agency in the executive branch of the Government." 42 U.S.C. § 901(a).  The Act provides further that the Commissioner is "appointed for a term of 6 years" and "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3).  The Supreme Court has held in other contexts that similar tenure protections violate separation of powers principles and, consequently, are unconstitutional.  *See Collins*, 141 S.Ct. at 1783-87 (holding that the tenure protection at the Federal Housing Finance Agency is unconstitutional); *see also Seila Law LLC v. Consumer Fin. Prot. Bureau*, ___ U.S. ____, 140 S.Ct. 2183, 2197-2207 (2020) (same for Consumer Financial Protection Bureau).  The current Commissioner concedes that the tenure protection specific to the Social Security Administration is likewise unconstitutional, *see* Docket No. 19 at 6; *see also Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542 (O.L.C. July 8, 2021), and other courts have reached the same conclusion, *see, e.g.*, *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ____, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021).

B.    ENTITLEMENT TO RELIEF

That the protected tenure provision violates constitutional separation-of-powers principles does not end the analysis, however.  In addition to determining that a protected tenure position is constitutionally defective, the Supreme Court made clear that such a provision is severable from the other governing statutes for the agency.  *Seila Law*, 140 S.Ct. at 2209, 2245.[4]  That a party was somehow impacted by an action or decision of an agency that suffers from this type of "tenure" violation does not mean that the action or decision was void or that the party is entitled to judicial

---

[4] Although the Supreme Court has not specifically addressed severability in the Social Security context, other courts have determined that the pertinent removal clause is similarly severable.  *Shaun A. v. Comm'r of Soc. Sec.*, No. C21-5003-SKV, 2021 WL 5446878, at *4 (W.D. Wash. Nov. 22, 2021) ("if the removal clause in § 902(a)(3) is stricken, the SSA remains fully functional").  The Court agrees.

relief. *See Collins*, 141 S.Ct. at 1788. To create an entitlement to relief, the claimant must show that the "unconstitutional provision [] inflict[ed] compensable harm." *Id.* at 1788. Hence, the aggrieved party must establish a "link" between the adverse action and the unconstitutional tenure-protection provision. *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021); *see also Collins*, 141 S.Ct. at 1788-89 (providing example of infliction of compensable harm).

Social Security claimants appealing a denial of benefits face an uphill battle in trying to establish the necessary link to obtain relief based on the unconstitutional removal provision. As explained by Justice Kagan, this constitutional violation is unlikely to lead to relief in the lion's share of social security appeals because, "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference." *Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring). The nature of appellate review in the social security context provides a further hurdle for claimants raising this argument:

> Even assuming § 902(a)(3)'s removal clause prevented former President Trump from removing Commissioner Saul and confirming a different Commissioner, there is no possibility § 902(a)(3) harmed plaintiff, because the final decision of the Commissioner that is before this Court for review is the ALJ's decision.... [T]he Court has reviewed the record and the ALJ's decision at issue and concludes that the ALJ did not err, and that the case should be affirmed for these reasons. Had the Court found otherwise and determined that the ALJ's decision was not supported by substantial evidence or free of legal error, the Court would have reversed the Commissioner's final decision. Hence, the Court reaches its decision to reverse or affirm the Commissioner's final decision notwithstanding the existence of § 902(a)(3)'s removal clause, who the Commissioner was at the time the decision became final, or what directives the Commissioner may have given the ALJ. The Court thus concludes that there is no possibility § 902(a)(3)'s removal clause harmed plaintiff in this case.

*Sarah H. v. Comm'r of Soc. Sec.*, No. 3:21-cv-05149-JRC, 2021 WL 5770269, at *5 (W.D. Wash. Dec. 6, 2021); *see also Brinkman v. Kijakazi*, No. 2:21-cv-00528-EJY, 2021 WL 4462897, at *2 (D. Nev. Sept. 29, 2021) ("Plaintiff has not shown that whether the President could remove the SSA Commissioner without limitations . . . impacted the independence of the ALJ or his decision in Plaintiff's case. It is well settled that the ALJ must exercise his independent judgment on the evidence before him" (internal quotations and citations omitted)). As Justice Kagan predicted in her concurrence, relief is routinely denied to social security appellants raising this argument within

the Ninth Circuit.  *See, e.g.*, *Sarah H.*, 2021 WL 5770269, at *5; *Frank W. v. Kijakazi*, No. 20cv1439-KSC, 2021 WL 5505883, at *4 (S.D. Cal. Nov. 24, 2021); *Rivera-Herrera v. Kijakazi*, No. 1:20-cv-01326-GSA, 2021 WL 5450230, at *7-8 (E.D. Cal. Nov. 22, 2021); *Shaun A.*, 2021 WL 5446878, at *5; *Shannon R. v. Comm'r of Soc. Sec.*, No. C21-5173-MLP, 2021 WL 5371394, at *9 (W.D. Wash. Nov. 18, 2021); *John R.*, 2021 WL 5356719, at *8; *Lisa Y.*, 2021 WL 5177363, at *6-8; *Amanda B. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-00434-BR, 2021 WL 4993944, at *9 (D. Or. Oct. 26, 2021); *Jesus V.O. v. Kijakazi*, No. 2:20-cv-05536 (VEB), 2021 WL 550528, at *6 (C.D. Cal. Oct. 18, 2021); *Jon E.C. v. Kijakazi*, No. EDCV 20-01257 PVC, 2021 U.S. Dist. Lexis 197598, at *1 n.3 (C.D. Cal. Oct. 13, 2021); *Brinkman*, 2021 WL 4462897, at *2; *Robles v. Comm'r of Soc. Sec.*, No. 2:20-cv-01069-JDP (SS), 2021 WL 4285170, at *4 n.6 (E.D. Cal. Sept. 21, 2021).

Justice Kagan proved prescient for the purpose of this case, as well.  Plaintiff fails to identify any link between the ALJ's adverse decision and the unconstitutional removal provision. Plaintiff instead conflates the Supreme Court's jurisprudence as to unconstitutional tenure protection with its jurisprudence as to unconstitutional appointments.  *See* Docket No. 17 at 17 (citing *Lucia*, 138 S.Ct. at 2055).  The Supreme Court has made clear that the mere existence of unconstitutional tenure protection is not grounds for relief and, in so doing, has explicitly distinguished the case law on which Plaintiff now relies.  *Collins*, 141 S.Ct. at 1788 (distinguishing *Lucia*).  Moreover, Plaintiff fails to make any showing that former President Trump would have removed Commissioner Saul and appointed a new Commissioner who would have administered this Plaintiff's claims any differently.  *See Sarah H.*, 2021 WL 5770269, at *5.

Accordingly, Plaintiff fails to demonstrate an entitlement to relief arising out of the unconstitutionality of the Social Security Commissioner's tenure-protection provision.  *See also Brand v. Kijakazi*,___F.Supp.3d.___, 2021 WL 5868131, at *4-7 (D. Nev. 2021)

. . . .

. . . .

. . . .

. . . .

IV.    **CONCLUSION**

Based on the forgoing, the Court **DENIES** the motion for reversal or remand (Docket No. 17) and **GRANTS** the countermotion to affirm (Docket No. 18).   The decision below is **AFFIRMED**.  The Clerk's Office is instructed to **ENTER FINAL JUDGMENT** accordingly and to **CLOSE** this case.

IT IS SO ORDERED.

Dated: March 15, 2022

_____
Nancy J. Koppe
United States Magistrate Judge

14